## BEAUMONT HOLDING CO. v. SAPP.

### No. 2426.

Court of Civil Appeals of Texas. Beaumont.

July 31, 1933.

Rehearing Denied Aug. 16, 1933.

Baker, Botts, Andrews & Wharton, of Houston, and Kitching & Kenna, of Beaumont, for appellant.

Jas. A. Harrison, of Beaumont, for appellee.

O'QUINN, Justice.

Appellant, a Texas corporation, sued appellee in trespass to try title to recover lot No. 1 in block No. 10 of the Chaison addition to the city of Beaumont. Other persons were made parties defendant, but their interests were properly disposed of by the trial court, and are not here concerned.

Appellee answered by general demurrer, general denial, and plea of not guilty. She also sought affirmative relief. As a basis for affirmative relief she alleged:

(a) That on November 23, 1926, she and her then husband, Tevis Sapp, entered into a building contract with one E. Conway Broun, in which they gave to said Broun a builder's and materialman's lien on lots Nos. 1 and 2 in block 10 of the Chaison addition to the city of Beaumont, Tex., to secure the payment of a note for $2,095 to cover the cost of improvements to be erected under said contract.

(b) That at the time of the execution of said contract and the creation of said lien lot No. 1 constituted the homestead of herself and her said husband, and, they resided thereon. That the purpose of said contract was the erection of improvements on lot No. 2, and the lien was to secure the payment of said improvements. That no improvements were to be placed upon lot No. 1, and none were made on same.

(c) That defendant, Lee Audrey Sapp, made many payments on said note prior to October 6, 1930, and on said date the balance due thereon, principal and interest, was $1,884.47, and that she made numerous payments on said note thereafter.

(d) That said Broun transferred said note to the Guardian Trust Company of Houston, Tex. That said Broun acted as agent of said Guardian Trust Company in collecting payments on said note, had full charge of the matter, and was pressing her for settlement of said note. That a purchaser, one Frank Posey, was found for said lot No. 2, being the lot upon which the improvements were erected, for the sum of $2,500, and said Guardian Trust Company, the then owner and holder of said note, agreed to the sale of said lot, which sale was consummated, and the proceeds of the sale, $2,500, were delivered to and accepted by said Guardian Trust Company. That said sum was more than sufficient to pay said note in full and leave several hundred dollars for appellee. That after the sale of said lot No. 2, and the receipt of said $2,500 by said Guardian Trust Company, she expected to get several hundred dollars, and on making demand for same learned for the first time that the Guardian Trust Company was claiming that nothing was due her, but to the contrary that she still owed $1,046.56 on her original debt. That she had executed a note for said sum to said Broun, who had assigned same to said Guardian Trust Company, and that she had executed a deed of trust on lot 1 in block 10 to secure this note.

(e) That lot 1 in block 10, aforesaid, was at all times and still was the homestead of

appellee, and the mechanic's lien thereon attempted to be given to secure said original note was null and void because no improvements were intended to be and were not constructed on said lot, but were constructed on lot 2, block 10. That the note for $1,046.56 executed on March 16, 1931, secured by deed of trust on lot 1, her homestead, was without consideration and void. That in fact the original note ($2095.00) had been paid and settled in full, and she (appellee) would not have signed said note for $1,046.56 and deed of trust to secure same had she known what they were. She further answered and alleged: That the note and deed of trust was not prepared by her or an attorney for her, and she had nothing to do therewith and no knowledge thereof. That said defendant is a colored woman of ordinary attainment, and does not understand or know the effect of legal papers, and she was told by the agent of the Guardian Trust Company and E. Conway Broun, when he brought the papers for her to sign, that they were to permit and authorize Frank Posey to purchase the property, lot 2, and that they did not affect her homestead lot. Being so informed, she did not try to read the documents and have them explained to her, but accepted as true the statement of said representative of the Guardian Trust Company and E. Conway Broun, and without investigation signed the papers and acknowledged one of them under the impression and believing that she was merely authorizing the sale of lot 2 to Frank Posey, and under the impression and belief that such sale would more than pay all of her indebtedness on said original note (for $2,095), and that in truth and in fact said sum was more than sufficient to pay said indebtedness in full.

(f) That, while said note was payable to said E. Conway Broun, said Broun was the agent of said Guardian Trust Company, the true owner of the prior indebtedness, and said note for $1,046.56 was immediately transferred by said Broun to the said Guardian Trust Company. That according to defendant's information and belief said note was assigned by said Guardian Trust Company to plaintiff Beaumont Holding Company, which said company appointed a substitute trustee under said deed of trust, and said substitute trustee, without any notice to her, sold said lot No. 1, block 10, under said deed of trust, and said Beaumont Holding Company bought same for a purported consideration of $1,000. but that no money was paid therefor, but said bid was credited against said $1,046.56 note.

(g) That the plaintiff, Beaumont Holding Company, was not a holder in due course of said note, and did not pay value for same, and took said note with knowledge of the true facts and conditions and with knowledge

of all the facts known to the Guardian Trust Company relative thereto. That the said Beaumont Holding Company, plaintiff, is a mere subsidiary of the Guardian Trust Company, and was not in position to claim that it was an innocent purchaser or bona fide holder of said note in due course, but took same subject to all defenses existing against same while held and owned by the Guardian Trust Company.

(h) Defendant prayed that, as said original note had been paid in full, and the purported lien created thereby was null and void because it was against her homestead at the time of its creation, the trustee's sale at which plaintiff, Beaumont Holding Company, became the purchaser of said lot 1 in block 10, be set aside, annulled, and declared void, and that she have general relief.

By supplemental petition, appellant replied to appellee's answer, by general demurrer, general denial, and specially that the note for $2,095 referred to in defendant's answer was acquired by the Guardian Trust Company, together with the lien securing same, for a valuable consideration, in due course, and before maturity.

After the evidence, both parties moved for an instructed verdict, which motions were refused. The case was then submitted to a jury upon the following special issues:

Special issue No. 1: "Do you find from a preponderance of the evidence that W. J. Baldwin was the agent of the Guardian Trust Company at the time Lee Audrey Sapp signed the deed of trust and note in question of date March 16, 1931, in this case?" To which the jury answered "Yes."

Special issue No. 2: "Do you find from a preponderance of the evidence that Lee Audrey Sapp, the defendant in this case, agreed with E. Conway Broun that the debt of $509.00 due by Tevis Sapp to said E. Conway Broun, would be paid out of the proceeds of the sale of Lot 2 to Frank Posey?" To which the jury answered "No. '

Special issue No. 3: "Do you find from a preponderance of the testimony that W. J. Baldwin, when Lee Audrey Sapp executed the deed of trust and note in question dated March 16, 1931, represented to her that she was merely signing papers authorizing the sale of the lot to Posey?" To which the jury answered "Yes."

Special issue No. 4: "If you have answered Special Issue No. 3 'yes,' and only in that event, then, do you find from a preponderance of the testimony that Lee Audrey Sapp relied on said statement of W. J. Baldwin?" To which the jury answered "Yes."

Special issue No. 5: "If you have answered Special Issue No. 3 'yes,' then, do you find from a preponderance of the evi-

dence that the defendant, Lee Audrey Sapp, signed said papers by reason of the said statement made to her by said Baldwin?" To which the jury answered "Yes."

Upon the findings of the jury, the court rendered judgment that the plaintiff, Beaumont Holding Company, take nothing by its suit to recover lot 1, block 10, in said Chaison addition to the city of Beaumont; that the note of date March 16, 1931, for $1,046.56 and the deed of trust on said lot 1, block 10, securing the payment of said note, be canceled and held for naught; that the sale of said lot 1, block 10, by the substitute trustee under said deed of trust on November 3, 1931, be vacated and held for naught. Motion for a new trial was overruled, and the case is before us on appeal.

Appellant's third assignment of error asserts that the court erred in submitting special issue No. 1 to the jury inquiring whether W. J. Baldwin was the agent of the Guardian Trust Company at the time appellee signed the note and deed of trust in question, dated March 16, 1931, because, it says, there was no evidence "showing or tending to show" that said Baldwin was the agent of said company.

The assignment is overruled. The record discloses that on and prior to November 23, 1926, lots Nos. 1 and 2, block 10, Chaison addition to the city of Beaumont, were the separate property of appellee, Lee Audrey Sapp; that on said date, November 23, 1926, she was living thereon with her husband, Tevis Sapp, and four minor children, and had lived thereon for about twenty years; that the residence was on lot No. 1. On November 23, 1926, appellee and her husband entered into a contract with E. Conway Broun for the construction of certain improvements on lot No. 2, the cost of said improvements to be $2,095. They executed their note for said sum payable to said Broun in monthly installments of $25 per month, and gave said Broun a builder's and materialman's lien upon both lots 1 and 2 to secure the payment of said note. Under this contract the improvements contracted for were erected upon lot No. 2.

For some years prior to November 23, 1926, E. Conway Broun was engaged in business as a contractor, and was indebted to the Guardian Trust Company of Houston, Tex. On February 5, 1927, Broun executed a collateral assignment to the Guardian Trust Company, and, among other notes, assigned the note for $2,095, executed by appellee November 23, 1926. At the time of this assignment all payments due on the note had been made. After the note was assigned to the Guardian Trust Company, appellee continued to make payments from time to time until October 6, 1930, at which time there was a balance due on said note of $1,884.47. This amount, with interest from October 6, 1930, was due and unpaid on March 16, 1931.

Appellee was divorced from her husband, Tevis Sapp, October 26, 1929. She continued to reside with her children in her home on lot No. 1, and has so resided ever since.

E. Conway Broun, acting in the interest of the Guardian Trust Company, was urging appellee to make past-due payments on the note of November 23, 1926, which note he had assigned to said Guardian Trust Company, and an agreement with appellee was made to sell lot 2 and its improvements to one Frank Posey for $2,500, and on March 16, 1931, the deal was closed, appellee executing her deed to Posey, conveying him lot 2 for $2,500, he paying $250 cash, and executing his vendor's lien note for $2,250, which $250 cash and note for $2,250 were promptly through Broun paid to and received by the Guardian Trust Company to be applied on her former note for $2,095. September 20, 1930, appellee executed her note payable to E. Conway Broun in the sum of $436.23, same to be paid in monthly installments of $10, and to secure the payment of this note she executed a deed of trust on said lots Nos. 1 and 2, Chaison addition. The deed of trust recited that this note was given for money advanced to pay taxes on said lots. October 27, 1930, Broun assigned this note and lien to the Guardian Trust Company. This note was also due and unpaid on March 16, 1931, when Frank Posey purchased lot 2.

In consummating the sale to Posey of lot 2, the Guardian Trust Company prepared, or had prepared, the instruments to be assigned by appellee. They consisted of a deed to Posey conveying lot 2, a note payable to E. Conway Broun of that date for the sum of $1,046.56, payable in monthly installments of $15 per month, and a deed of trust on lot 1 (her home) securing said note. The Guardian Trust Company sent these papers to Miss Nellie Robertson, an employee and the manager of the Stewart Abstract Company, at Beaumont, Tex., with a letter of instruction. She delivered these papers to W. J. Baldwin, an attorney, who carried them to the home of appellee and secured her signature to same. For his services in procuring appellee's signature to these instruments, he charged $60, and this was paid to him by the Guardian Trust Company through Miss Robertson. Other facts and circumstances are in evidence bearing on the issue of the agency of said Baldwin.

The evidence we think amply supports the jury's finding that, when W. J. Baldwin secured appellee's signature to the note and deed of trust in question, he was the agent of and acting for the Guardian Trust Company.

The record shows, and appellant admits in its brief, that the amount of the note for

$1,046.56 was composed of the following items:

| | |
|---|---|
| Principal on note of November 23, 1926 | $1884.47 |
| Interest on same from October 6, 1930 to March 16, 1931 | 70.16 |
| Principal of note September 20, 1930 for taxes | 436.23 |
| Interest on same | 17.46 |
| Insurance premiums | 19.91 |
| State and county taxes for 1930 | 15.48 |
| City taxes for 1930 | 69.87 |
| Paving lien certificate | 347.41 |
| For abstracts | 39.00 |
| Recording fees | 16.29 |
| Attorneys fees (Paid Baldwin) | 60.00 |
| Balance due on note of Tevis Sapp | 509.40 |
| Interest on same | 54.40 |
| Total | $3540.56 |
| From this was deducted the $2500.00 paid by Posey for Lot 2 | 2500.00 |
| | $1046.56 |

The note payable to Broun for $1,046.56, dated March 16, 1931, was assigned to the Guardian Trust Company by Broun on March 18, 1931, together with the lien securing same. No payments having been made by appellee on the note from May 1, 1931, to October 1, 1931, the Guardian Trust Company, the holder of the note, declared the note due, and sale of lot 1 under the deed of trust was made November 3, 1931, and appellant became the purchaser for the recited consideration of $1,000 cash. Appellant is an arm of the Guardian Trust Company, both corporations having the same active officers. The recited cash consideration of $1,000 was not paid by appellant, but said sum was simply credited on the $1,046.56 note held by the Guardian Trust Company. This suit followed.

■ It is apparent from an inspection of the items that go to make up the amount of the note that some of them are foreign to the undertakings of appellee with Broun or the Guardian Trust Company. For instance, the note of her ex-husband, Tevis Sapp, for $509.88, with interest $54.40, amounting to $564.28. It appears that, while appellee and Tevis Sapp were husband and wife, Tevis Sapp had various dealings with E. Conway Broun, and owed Broun. That was years before. So, in making up the list of demands Broun desired to include in the note, this item was included. It is not even contended that appellee knew of the note, and certainly it was in no way involved in the dealings here in question, other than Broun's effort to have it included in the note, and to have appellee give a deed of trust on her home to secure its payment. But it is insisted that, as appellee was a feme sole at the time she executed the note and deed of trust, the lien was valid even if the lot did constitute her homestead. But, without discussing this question of law, if it be conceded that such is the law, still for the note to be a binding obligation and the deed of trust lien valid and enforceable, appellee must have voluntarily executed same with full knowledge of all the facts as to the note and lien; in other words, she must have known and assented to all the items included in the note, and that she was securing its payment by a deed of trust lien on her home.

It is insisted by appellant that she had such knowledge; that at the time of the sale by appellee of lot 2 to Posey she was furnished with a statement of the items making up the amount of the note. This she denied, and said she had never seen such statement until the trial of the case. It is also contended that a full explanation of this statement and all of the items going to make up the amount of the note, and the nature of the instruments she was to sign, were made to her by the attorney Baldwin, but she denied that such was done, and said that Baldwin told her that the papers she was signing were to carry out the sale of lot 2 to Posey. She said that he did not tell her that she was signing a note or executing a deed of trust; that she believed what he said about her signing the instruments which were only to complete the sale to Posey, and accordingly signed them, but that, had she known the true nature of the papers, she would not have signed same. These questions were submitted to the jury, and they found for appellee on each of them. That being true, the note was obtained by fraud, and was therefore void. Also the findings of the jury show that appellee never assented to the note—the minds of the parties never met—and so no contract resulted.

■ Appellant's contention that, if appellee did not know the nature of the papers signed by her, it was because of her negligence, in that she should have read them before she signed same, is overruled. Appellee is an ordinary negro woman. She knew E. Conway Broun. She and her ex-husband, Tevis Sapp, had had business dealings with him. She knew that he had transferred the $2,095 note and lien to the Guardian Trust Company, and that she was in arrears in her payments. She knew that Broun was acting for the Guardian Trust Company in urging her to make further payments. She knew that in connection with Broun and said company she had agreed to sell lot 2 upon which all the improvements had been made for the $2,095 note and lien, to Frank Posey for $2,500, and that there was only $1,884.47 due on the note, she having paid some $800 on same. She had nothing to do with the preparation of the papers in consummating the sale of lot 2. She was acquainted with W. J. Baldwin, who it appears

was at times lawyer for Broun, and she had confidence in them, and, when Baldwin procured her signature to the instruments of date March 16, 1931, she said he told her that they were for the purpose of selling lot 2 to Posey, without any further explanation, and that she believed what he said and signed the papers. There was nothing to excite her suspicion that she was being misled or defrauded. Under all the facts and circumstances, we do not believe appellee was negligent in not reading the papers, but that she was warranted in acting as she did by reason of her confidence in the parties.

■ Appellant's several assignments assailing the findings of the jury as without sufficient support in the evidence have been considered, and are all overruled. Nor was there any error in the court's failure to define the word "agent" in his charge in submitting special issue No. 1 to the jury. Said word is a word of ordinary signification and of everyday use and easily understood by a person of ordinary understanding. The failure to define it could not in any degree have caused the jury to have returned a wrong verdict, or answer to the question. If there was error, it was harmless. The refusal of the court to render judgment for appellant non obstante veredicto was not error. Upon the answers of the jury to the special issues, which were material, proper, and correctly submitted, no other judgment could have been rendered than the one that was rendered.

■ The second and eleventh assignments complain that the court erred in not instructing a verdict for appellant. Under the pleadings and the facts in evidence, the issues submitted to the jury were raised, and the court could not withdraw the case from the jury by instructing a verdict. Especially was this true of the issue of fraud pleaded and raised by the evidence for appellee. The assignments are overruled.

The judgment should be affirmed, and it is so ordered.

Affirmed.